RECEIVED
IN LAKE CHARLES, LA.

JUN 16 2014

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CANTU SERVICES, INC. | * | CIVIL ACTION NO. 2:12-CV-1292 |
| | * | |
| **Plaintiff** | * | |
| | * | |
| V. | * | **JUDGE MINALDI** |
| | * | |
| MELVIN LEE FRAZIER, ET AL. | * | |
| | * | |
| **Defendants** | * | **MAGISTRATE JUDGE KAY** |

*************************************************************************

## MEMORANDUM RULING

Before the court is the Motion to Dismiss [Doc. 33], filed by Kevin Monk, Renee Ellender Roberie, Mark S. Martin, Janell Bosarge, and Curt Eysink (defendants), to which the plaintiff has filed an Opposition [Doc. 75], and the defendants have filed a Reply [Doc. 93]. As a number of the issues raised in the defendants' Motion [Doc. 33] have already been dispensed with,[1] the only remaining matters to be addressed herein pertain to the applicability of the doctrine of qualified immunity; whether the plaintiff has failed to state a claim under either the Equal Protection Clause or the Due Process Clause of the United States Constitution; and whether this matter should be dismissed for improper venue. For the following reasons, the defendants' Motion [Doc. 33] is hereby **GRANTED IN PART**, and **DENIED IN PART**.

## FACTS & PROCEDURAL HISTORY

The Randolph-Sheppard Act was enacted for the purpose of creating employment opportunities for blind persons by establishing a system by which the United States Department of Education is empowered to designate State Licensing Agencies (SLAs) in each state which may then issue to blind persons licenses for the operation of vending facilities on federal

---

[1] *See, e.g.*, Minutes of Court [Doc. 77] (dissolving the previously issued temporary restraining order and denying the plaintiff's motion for preliminary injunction); J. [Doc. 116] (dismissing the official capacity claims against all of the defendants).

1

property. *See* Randolph-Sheppard Act, 20 U.S.C. §§ 107-107e (2006) (the Act). *See also Cantu Services, Inc. v. Roberie*, 535 Fed. Appx. 342, 343 (5th Cir. 2013) (describing the Act). "In authorizing the operation of vending facilities on Federal property, priority [is] given to blind persons licensed by a State agency as provided in [the] Act." 20 U.S.C. §§ 107(b), 107a(b) (2006). In Louisiana, the Louisiana Workforce Commission (LWC) operates as the SLA.[2]

Mr. Eugene Breaud was the blind vendor licensed to provide food services at Fort Polk from 2001 until his death in 2011. During that time, Breaud partnered with the plaintiff in fulfilling that contract.[3] Immediately following Breaud's death, the plaintiff continued providing food services at Fort Polk in the absence of a blind vendor on an interim basis until Mr. Miles Kimball was temporarily awarded the position.[4]

When the plaintiff's contract was near expiration, the LWC announced that it would be accepting applications from licensed blind vendors for a permanent position; the announcement further stated that LWC would assist the blind vendor in finding and selecting a "teaming partner."[5] The licensed blind vendor and the selected teaming partner were then to collaborate in presenting a proposal to the federal government for a new contract for the provision of food services at Fort Polk.[6]

LWC then selected the defendant, Melvin Lee Frazier, as the new licensed blind vendor.[7] Frazier informed the plaintiff that he was now the licensed blind vendor for Fort Polk, and the plaintiff alleges that Frazier "agreed that [the plaintiff] would be the teaming partner" for Fort

---

[2] *See* Am. Compl. [Doc. 18], at ¶ 16 (*citing* LA. REV. STAT. ANN. §§ 23:1, 23:3022, 36:301, 36:309).
[3] *See id.* at ¶¶ 19-20.
[4] *Id.* at ¶ 20.
[5] *Id.* at ¶ 23. According to the plaintiff's Amended Complaint, blind vendors fulfilling contracts under the Act often work with so-called "teaming partners"—food service consulting companies which assist the blind vendor in the food service operation. Am. Compl. [Doc. 18], at ¶¶ 17-18.
[6] *Id.*
[7] Am. Compl. [Doc. 18], at ¶24.

Polk.[8] Frazier notified the plaintiff several weeks later that he, Frazier, had been notified by the defendants that a meeting would be held to determine which of the potential teaming partners would ultimately be awarded the teaming partner position.[9]

Both the plaintiff and Blackstone Consulting, Inc. (Blackstone), gave presentations to Frazier and the LWC, in early October, 2011.[10] Shortly thereafter, the plaintiff was notified by Renee Ellender Roberie, Chief Financial Officer for the LWC, that the LWC did not "acknowledge or approve of" the email that Frazier had sent to the plaintiff. She further stated that Frazier "did not have the authority" to select the plaintiff as the teaming partner because, as was apparently stated in the initial vacancy announcement, the LWC "must approve all teaming partner agreements."[11]

Frazier and the LWC ultimately did not select the plaintiff as Frazier's teaming partner for the new Fort Polk contract.[12] The plaintiff alleges that the LWC and Frazier's denial of the plaintiff's services was "arbitrary and capricious and was not based on [the plaintiff's] past performance," qualifications, or "any other legitimate or rational basis."[13] In late October, 2011, Frazier and Blackstone, through the LWC, put forth a bid for the new long-term food service contract at Fort Polk.[14] The federal government thereafter awarded them the contract.[15]

Furthermore, the plaintiff also complains that it had been advised that it would be entering into a "bridge contract" between the expiration of the contract extension that was in place at the time of the filing of this suit, on June 30, 2012, and the commencement of the new

---

[8] Am. Compl. [Doc. 18], at ¶ 25. *See also* Email from Melvin Lee Frazier to Robert Welch, Chief of Staff for Cantu Services, Inc., Sept. 15, 2011 [Doc. 18-4], at 2.
[9] Am. Compl. [Doc. 18], at ¶ 26.
[10] *Id.* at ¶¶ 27-31.
[11] Letter from Renee Ellender Roberie to Ricardo Cantu, Oct. 21, 2011 [Doc. 18-10].
[12] Am. Compl. [Doc. 18], at ¶35.
[13] *Id.*
[14] *Id.* at ¶ 39.
[15] *Id.* at ¶ 40.

long term Fort Polk contract.[16] However, on May 3, 2012, Kevin Monk, Executive Director of Blind Services for the LWC, wrote an email to the plaintiff in which he indicated that the plaintiff's services would not be employed at Fort Polk during the "bridge contract" period.[17]

The plaintiff filed suit on May 18, 2012, under 42 U.S.C. § 1983.[18] The plaintiff alleges violations of its equal protection and due process rights against all of the defendants, in both their official and personal capacities, and also asserts a breach of contract claim against Frazier.[19] In its Amended Complaint [Doc. 18], in addition to Frazier, the plaintiff names as defendants Renee Ellender Roberie, Chief Financial Officer for the LWC; Curt Eysink, Executive Director of the LWC; Kevin Monk, Executive Director of Blind Services for the LWC; Joseph Burton,[20] as the LWC's Randolph-Sheppard Program Manager; Janell Bosarge, one of the managers of the LWC's Randolph-Sheppard Program; and Mark. S. Martin, Director of Rehabilitation Services for the LWC.[21]

The instant Motion to Dismiss was filed on June 13, 2012.[22] On July 6, 2012, the court dissolved the previously issued temporary restraining order and denied the plaintiff's request for a preliminary injunction against the defendants.[23] On the same date, the court denied the defendants' Rule 12(b)(1) motion to dismiss the plaintiff's official capacity claims based on a lack of subject matter jurisdiction.[24] The defendants appealed, and the Fifth Circuit, finding that the plaintiff had failed to plead an ongoing violation of federal law sufficient to assert a claim

---

[16] Am. Compl. [Doc. 18], at ¶ 41.
[17] Email from Kevin Monk to Mr. Cantu and Robert Welch, May 3, 2012 [Doc. 18-13], at 2.
[18] *See* Am. Compl. [Doc. 18], at ¶¶ 45-77.
[19] *Id.* at ¶¶ 45-79.
[20] Mr. Burton was subsequently dismissed, without prejudice. *See* Order [Doc. 130]; FED. R. CIV. PRO. 41(a).
[21] Am. Compl. [Doc. 18], at ¶¶ 2-7.
[22] *See generally* Mot. to Dismiss [Doc. 33].
[23] Minutes of Court [Doc. 77].
[24] *Id.*

4

against a state official in his or her official capacity, reversed the ruling of the district court.[25] This court thereafter entered a Judgment [Doc. 116] consistent with the ruling of the Fifth Circuit that dismissed the plaintiff's claims against the defendants in their official capacities. However, these prior rulings left several of the issues raised in the defendants' motion unresolved—namely, whether the plaintiff has failed to state a claim for relief for the alleged violation of either its due process or equal protection rights; the applicability of qualified immunity; and whether this matter should be dismissed for improper venue.[26]

## LAW & ANALYSIS

The defendants' Motion [Doc. 33] is styled as a motion to dismiss pursuant to Rule 12.[27] *See generally* FED. R. CIV. PRO. 12. In considering a Rule 12 motion to dismiss, the district court is confined to consider only the contents of the pleadings and any attachments thereto. FED. R. CIV. PRO. 12(d); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, "[i]f the district court considers information outside of the pleadings, the court must treat the motion as a motion for summary judgment." *Kennedy v. Chase Manhattan Bank United States, N.A.*, 369 F.3d 833, 839 (5th Cir. 2004) (*citing Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536, 539 (5th Cir. 2003)). *See also* FED. R. CIV. PRO. 12(d). Considering that the parties have specifically referenced materials outside of the pleadings, as well as made arguments predicated on such materials,[28] and the fact that the consideration of such materials at this time is appropriate, the instant motion is subject to a summary judgment standard. *See, e.g., Lockett v. Allstate Ins. Co.*, No. 6:10-cv-1541, 2010 U.S. Dist. LEXIS 137902 (W.D. La. Dec. 7, 2010), *adopted by* 2011 U.S. Dist. LEXIS 98 (W.D. La. Jan. 3, 2011).

---

[25] *See Cantu Services, Inc. v. Roberie*, 535 Fed. Appx. 342, 345 (5th Cir. 2013).
[26] *See* Memo. in Supp. [Doc. 33-2], at 11-18, 23.
[27] Mot. to Dismiss [Doc. 33].
[28] *See* Opp. [Doc. 75], at 15-17; Reply [Doc. 93], at 2, 4.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A district court shall enter "summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Butler v. City of Shreveport*, No. 5:13-cv-969, at *6 (W.D. La. Apr. 29, 2014) (*citing Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must 'go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)). The nonmovant may not meet this burden by presenting only "some metaphysical doubt," "unsubstantiated assertions," or a mere "scintilla" of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

"A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 762 (5th Cir. 2001) (*citing Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999)). While the movant must generally demonstrate the absence of a genuine issue of material fact, when a defendant pleads a defense of qualified immunity to a claim under 42 U.S.C. § 1983, the burden shifts to the plaintiff. *Mosley v. White*, 464 Fed. Appx. 206, 210 (5th Cir. 2010) (citations omitted). Nevertheless, in reviewing such a motion, all facts and inferences are to be viewed "in the light most favorable to the party opposing the motion." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (additional citation omitted)). The court will not, however, "in the absence of any proof, assume that the

6

nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (*citing Lujan v. Nat'l Wildlife Fed'n*, 110 S. Ct. 3177, 3118 (1990)).

42 U.S.C. § 1983, which provides a civil cause of action for one who has suffered a deprivation of rights, states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

However, when government officials exercise their authority in performing the discretionary functions of their offices, the doctrine of qualified immunity "generally shield[s them] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Latiolais v. Cravins*, 484 Fed. Appx. 983, 987 (5th Cir. 2012) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Hernandez v. Terrones*, 397 Fed. Appx. 954, 964 (5th Cir. 2010) (*citing Pearson v. Callahan*, 555 U.S. 223 (2009)). In response to a defendant's claim of qualified immunity, a court must decide "1) [w]hether the facts ma[ke] out a violation of a constitutional right; and 2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct so that a reasonable official in the defendant's situation would have understood that his conduct violated that right." *Latiolais*, 484 Fed. App. at 988 (*citing Ontieros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009) (additional citation omitted)). It is within a district court's discretion to consider either prong of the qualified immunity inquiry first. *Pearson*, 555 U.S. at 235-36.

## EQUAL PROTECTION CLAIMS

The plaintiff has asserted that the defendants violated its rights secured by the Equal Protection Clause of the Fourteenth Amendment with respect to both the so-called bridge contract and the new long term food service contract at Fort Polk.[29]  The Equal Protection Clause "essentially directs that all persons similarly situated be treated alike." *Vicknair v. La. Dep't of Wildlife & Fisheries*, No. 6:11-cv-184, 2013 U.S. Dist. LEXIS 39000, at \*39 (W.D. La. Jan. 29, 2013) (*citing City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1989)).  *See also Stoneburner v. Secretary of the Army*, 152 F.3d 485, 491 (5th Cir. 1998) (citations omitted). The Supreme Court has stated that its purpose "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*citing Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923) (additional citation omitted)).

The plaintiff herein has not asserted any allegations of "class-based" discrimination.[30] However, a plaintiff may succeed in a claim based on an alleged violation of the Equal Protection Clause under a "class of one" theory in which "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citations omitted).  A plaintiff suing under a class of one theory need not allege membership in a protected class. *Mata v. City of Kingsville*, 275 Fed. Appx. 412, 415 (5th Cir. 2008) (citations omitted).  Nevertheless, "disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal

---

[29] Am. Compl. [Doc. 18], at 12-13, 17-18.

[30] *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (*citing Washington v. Davis*, 426 U.S. 229, 247-48 (1976) (additional citation omitted)) ("To state a claim under the Equal Protection Cluase, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.").

Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (*citing Washington v. Davis*, 426 U.S. 229, 246-50 (1976)).

The plaintiff herein relies upon a class of one theory, and asserts that there was no rational basis for intentionally treating the plaintiff differently from Blackstone.[31] The plaintiff also asserts that the defendants "unlawfully considered and accepted from Blackstone a ten percent (10%) kickback of the profits," and that this kickback signifies "the only meaningful or discernible difference" between the two company's proposals.[32] The plaintiff further alleges that it was unfair for the defendants to consider this donation in selecting the teaming partner because the fact that such a donation would be considered among the hiring criteria was never disclosed to the plaintiff.[33] However, this allegation is false and misleading, as Blackstone offered, in its presentation to the LWC, to donate ten percent of its profits to the Blind Vendors Trust.[34]

Black's Law Dictionary defines "kickback" as "[a] return of a portion of a monetary sum received, especially as a result of coercion or a secret agreement." BLACK'S LAW DICTIONARY, (9th ed. 2009). These funds were not to be given to the defendants, nor to any individual with any decision-making authority within the LWC. The proposed donation was openly discussed, in no way concealed, and there does not appear to have been anything illegal about this proposition.

Louisiana Revised Statute § 23:3043 "established a special fund in the state treasury to be known as the Blind Vendors Trust Fund." This fund "consist[s] of monies collected from certain vending machines located on state, federal, and other property pursuant to the Randolph-Sheppard Act. The fund may receive monies from any source." LA. REV. STAT. ANN. §

---

[31] Opp. [Doc. 75], at 15-16.
[32] Opp. [Doc. 75], at 16.
[33] *Id.* at 16.
[34] *See, e.g.*, Depo. of Kevin Monk, June 15, 2012 [Doc. 64-1], at 18.

23:3043(a) (2010). All funds in the Blind Vendors Trust Fund are forwarded to the state treasurer before being "credited to the Blind Vendors Trust Fund account under the [LWC]." LA. REV. STAT. ANN. § 23:3043(b) (2010). Unexpended monies remain in the fund at the end of the fiscal year, and all funds therein are used solely for programs for the blind. LA. REV. STAT. ANN. § 23:3043(c) (2010).

The plaintiff's argument that such a proposed donation violates its equal protection rights is without merit. Indeed, were Blackstone to propose a donation of any percentage of its profits to any charitable cause, and were such a proposed donation to be considered by the defendants in selecting a teaming partner, one could not say that that decision lacked a rational basis.

In *APM*, the plaintiff, an African-American owner of a civil and structural engineering firm, filed an equal protection claim against the North Texas Tollway Authority (Authority) following his exclusion from the second round of a bidding process for a state contract. *APM*, 2009 U.S. Dist. LEXIS 60345, at *2-4. The plaintiff argued that the selection process was unfair, and that this constituted a violation of its equal protection rights. *Id.* at *7-8. The court, finding for the Authority, noted that the *APM* plaintiff, like its competitors, simply submitted a proposal and, "like the other bidding firms, could do no more than hope." *Id.* at *8-9. Further, the *APM* court found that the plaintiffs therein "were treated precisely the same as every other contractor, negativing any claim under the Equal Protection [C]lause." *Id.* at *8. Addressing allegations similar to those made by the instant plaintiff, the *APM* court found that the plaintiffs "failed to allege facts that would create plausible liability under the Equal Protection Clause through Section 1983." *Id.* at *7. Such is the case here.

The Equal Protection Clause protects individuals from the arbitrary and irrational exercise of governmental authority. As such, the relevant question is whether a rational

10

decision-maker sitting in the place of the defendants could have awarded the bridge contract, as well as the long term Fort Polk food service contract, to one other than the plaintiff. *See Lindquist v. City of Pasadena*, 669 F.3d 225, 236 (5th Cir. 2012). There are a variety of factors that anyone sitting in the defendants' position could have reasonably considered—for example, the competence of the presenters, and the donation to the Blind Vendors Trust Fund, among many others— and the plaintiff has failed to make a showing that there was no rational basis for not selecting the plaintiff for the Fort Polk contract. As such, the plaintiff has failed to show that its equal protection rights were violated. As a result, the plaintiff cannot overcome the defendants' assertion of a qualified immunity defense. Accordingly,

**IT IS ORDERED** that the defendants' Motion [Doc. 33] be and hereby is **GRANTED** insofar as it requests the dismissal of the plaintiff's equal protection claims on the basis of qualified immunity.

## DUE PROCESS CLAIMS

The plaintiff next asserts that the defendants violated the plaintiff's Fourteenth Amendment Due Process rights with respect to both the bridge contract and the new long term food service contract at Fort Polk.[35] The plaintiff grounds its due process argument in the allegation that the defendants refused to consider the plaintiff for either the bridge contract or the long term contract.[36]

"At a minimum, notice and a hearing are required before an individual may be deprived of his property or liberty interests." *Sys. Contractors Corp. v. Orleans Parish Sch. Bd.*, 148 F.3d 571, 575 (5th Cir. 1998) (*quoting Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). As a preliminary matter, however, the plaintiff must first identify a protected life, liberty, or property

---

[35] Am. Compl. [Doc. 18], at 13-16.
[36] *Id.*

interest, as well as the governmental action that allegedly caused a deprivation of that interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (citation omitted). The Constitution does not create property interests; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).[37]

It is unclear whether the plaintiff has any property interest in either the bridge contract or the long term Fort Polk contract. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. While the Louisiana Public Bid Law, LA. REV. STAT. ANN. § 38:2211, *et seq.*, has been held to create a property right in an entity that submits the most attractive bid on a public works contract, *see generally Haughton Elevator Div. v. State*, 367 So. 2d 1161 (La. 1979),[38] it is unclear whether this was a public contract to which the Public Bid Law would be applicable. The defendants argue that the contract in question herein is a subcontract to a government contract, not a government contract itself, and therefore it is not subject to public bid laws.[39]

In *Nobles Construction, L.L.C. v. Washington Parish, et al.*, 544 Fed. Appx. 263 (5th Cir. 2013), and *Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 672 (5th Cir. 2007), the Fifth Circuit was similarly faced with claims by companies that had unsuccessfully sought public contracts. In both instances, rather than analyze the applicability of Louisiana's Public Bid law to the case at bar, the Fifth Circuit assumed that the plaintiff had a

---

[37] While "[t]he right or opportunity to contract is a constitutionally protected *liberty* interest," *Walker v. Univ. of Tex. Med. Branch*, No. 1:08-cv-417, 2009 U.S. Dist. LEXIS 73262, at *20 (E.D. Tex. June 30, 2009) (*citing Roth*, 408 U.S. at 572), there is no allegation herein that the plaintiff was denied of its *right* to contract.
[38] *See also Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 671 n.1 (5th Cir. 2007) (citations omitted).
[39] Reply [Doc. 93], at 6.

property interest in the contract for the purposes of appeal. *Nobles Const., L.L.C.*, 544 Fed. Appx. at 265, 266 (*discussing Marco*, 489 F.3d at 672-75). The court shall likewise assume herein, *arguendo*, that the plaintiff possessed a property interest in the renewal of its contract under the Louisiana Public Bid law, and that the award of the contract to Blackstone constituted a deprivation of that property interest.

In *Marco*, the plaintiff sued the Louisiana Regional Transit Authority (RTA), alleging that the RTA arbitrarily awarded a public advertising contract to another party in spite of the plaintiff's bid being the lowest, in violation of the Louisiana Public Bid Law. *Marco*, 489 F.3d at 671 (*citing* LA. REV. STAT. ANN. § 38:2211, *et seq.*). After assuming without deciding that the plaintiff had submitted a bid superior to his competitors, the Fifth Circuit addressed the plaintiff's due process claim. The court found that "the state provides unsuccessful bidders with adequate notice and hearing." *Id.* at 674. Notice of the deprivation is provided upon the state's informing the disappointed bidder of the contract's award to someone else, and "the state guarantees unsuccessful bidders the right to a hearing through the Public Bid Law, which authorizes any unsuccessful bidder to sue in Louisiana state court to enjoin the public entity from awarding the contract." *Id.* (*citing* LA. REV. STAT. ANN. § 38:2220(B)).[40] Accordingly, the Fifth Circuit affirmed the district court's dismissal of the *Marco* plaintiff's claim. *Marco*, 489 F.3d at 675.

The *Nobles* court was faced with a similar situation in which the plaintiff was denied a landfill operation contract with Washington Parish and the City of Bogalusa, despite having submitted the lowest bid, because a competitor had received a higher "evaluation score" which

---

[40] *See also Marco*, 489 F.3d at 674 (*quoting Airline Constr. Co., Inc. v. Ascension Parish Sch. Bd.*, 568 So. 2d 1029, 1032 (La. 1990) (citation omitted)) ("Louisiana jurisprudence has long recognized that an unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder.").

13

was predicated on a variety of factors, in addition to the bid cost. *Nobles*, 544 Fed. Appx. at 264. The *Nobles* plaintiff learned in an article in the *Bogalusa Daily News* that its bid had been rejected. *Id.* at 264. After the contract had received the Parish Council's approval, the plaintiff filed suit alleging that the Louisiana Public Bid law required the city to accept the lowest bid and requested a *writ of mandamus* to either reopen the bidding process or award the contract to the plaintiff, in addition to damages for due process violations under 42 U.S.C. § 1983. *Id.* at 264-65. As in *Marco*, the Fifth Circuit first assumed for the purposes of appeal that the *Nobles* plaintiff had a property interest under the Louisiana Public Bid Law. *Id.* at 265-66. The court then found that,

> [b]ecause an unsuccessful bidder may seek an immediate injunction through a summary proceeding, and because the injunction may enjoin the execution of the contract, the injunction prevents the deprivation of any significant property interest and is therefore an adequate pre-deprivation remedy. The availability of this summary proceeding, coupled with the notice provided by the announcement of the award, satisfie[d] the elements of the due process prong of the Due Process Clause.

*Nobles*, 544 Fed. Appx. at 266 (internal quotations and citations omitted). As such, the Fifth Circuit affirmed the district court's dismissal of the *Noble* plaintiff's due process claims.[41]

There is nothing herein which would militate a holding different from those reached in *Nobles* and *Marco*. Assuming, without deciding, that the plaintiff submitted the lowest bid and thereby attained a property interest in accordance with the Louisiana Public Bid law, the plaintiff herein was provided with pre-deprivation notice when it was directly contacted via email.[42]

---

[41] It is perhaps noteworthy that the *Nobles* court also conducted an analysis of the plaintiff's claims predicated on a violation of substantive due process. *Nobles*, 544 Fed. Appx. 267-68. However, as the instant plaintiff's Amended Complaint, *see* Am. Compl. [Doc. 18], at ¶¶ 58-59, as well as the plaintiff's Opposition to the instant Motion, *see* Opp. [Doc. 75], at 17-18, 22, ground their arguments in terms of an opportunity for notice and a hearing, only procedural due process will be discussed herein, and the court shall assume that no substantive due process claim has been asserted.

[42] *See* Email from Kevin Monk to Mr. Cantu and Robert Welch, May 3, 2012 [Doc. 18-13], at 2.

The plaintiff also alleges that the defendants initially failed to notify the plaintiff of the open teaming partner position, while giving notice to Blackstone.[43] However, assuming that the defendants had a duty to specifically notify the plaintiff, which is by no means certain, the defendants' "alleged failure to do so did not harm the [p]laintiffs because the [p]laintiffs were clearly aware of the bid solicitation." *APM Assocs. V. N. Tex. Tollway Auth.*, No. 4:09-cv-159, 2009 U.S. Dist. LEXIS 60345, at *8 (E.D. Tex. Jul. 15, 2009) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (dismissing a similar claim for lack of standing).  Moreover, this allegation is belied by the fact that Frazier was instructed by the LWC to contact both the plaintiff and Blackstone in setting up meetings with the two potential teaming partners.[44]  It appears from the record that ample notice was provided to the plaintiff both at the time that the teaming partner position became open as well as at the time the plaintiff was notified via email that it would not be receiving the Fort Polk contract.

As the Fifth Circuit found in *Nobles* and *Marco*, state law remedies provide disappointed bidders with an adequate opportunity to be heard by way of the provisions of the Public Bid Law.  It cannot be said that the plaintiff suffered a violation of its right to due process under the Fourteenth Amendment.  As such, the plaintiff has not shown that a due process violation occurred such that it may defeat the defendants' claim of qualified immunity.  Accordingly,

**IT IS ORDERED** that the defendants' Motion [Doc. 33] be and hereby is **GRANTED** insofar as it requests the dismissal of the plaintiff's Due Process claims on the basis of qualified immunity.

---

[43] Opp. [Doc. 75], at 16.
[44] Compl. [Doc. 1], at ¶ 22.

15

## VENUE

The defendants next move for dismissal for improper venue pursuant to Rule 12(b)(3).[45] *See* FED. R. CIV. PRO. 12(b)(3).  Title 28 U.S.C. § 1391(b)(1) states that "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  *See also Clark v. Marx*, No. 11-2149, 2012 U.S. Dist. LEXIS 2429, at *15-17 (W.D. La. Jan. 9, 2012).  A civil action brought in the wrong district shall be dismissed or, if it is in the interest of justice, transferred to any district where it could have been brought.  28 U.S.C. § 1406(a).  All of the named defendants reside in Louisiana, and Frazier resides in Lake Charles, Louisiana, located in the Western District.[46]  The defendants offer no argument in opposition to this in their Reply.  The court finds that venue is proper in the Western District of Louisiana, and this matter need not be either dismissed or transferred to another district to satisfy the venue provisions of 28 U.S.C. § 1391.  Accordingly,

**IT IS ORDERED** that the defendants' Motion [Doc. 33] be and hereby is **DENIED** insofar as it requests the dismissal of the above-captioned matter on the basis of improper venue.

Lake Charles, Louisiana, this 13 day of _____ June _____, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[45] *See* Memo. in Supp. [Doc. 33-2], at 30-31.
[46] Opp. [Doc. 75], at 22-23.