UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CANTU SERVICES, INC., | * | CIVIL ACTION NO. 2:12-CV-1292 |
| Plaintiff | * | |
| V. | * | JUDGE MINALDI |
| MELVIN LEE FRAZIER, | * | |
| Defendant | * | MAGISTRATE JUDGE KAY |

*************************************************************************

## MEMORANDUM RULING

Before the court is the Motion for Partial Summary Judgment (Rec. Doc. 195) filed by Cantu Services, Inc. ("Cantu"). Melvin Lee Frazier ("Frazier") filed an Opposition (Rec. Doc. 198), and Cantu filed a Reply (Rec. Doc. 200). For the following reasons, the plaintiff's motion (Rec. Doc. 195) is **DENIED**.

## FACTS & PROCEDURAL HISTORY

The Randolph-Sheppard Act was enacted for the purpose of creating employment opportunities for blind persons by establishing a system by which the United States Department of Education is empowered to designate State Licensing Agencies ("SLAs") in each state which may then issue to blind persons licenses for the operation of vending facilities on federal property. *See* Randolph-Sheppard Act, 20 U.S.C. §§ 107-107e (2006) (the Act); *see also Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 343 (5th Cir. 2013) (describing the Act). "In authorizing the operation of vending facilities on Federal property, priority [is] given to blind persons licensed by a State agency as provided in [the] Act." 20 U.S.C. §§ 107(b), 107a(b)

1

(2006). In its Amended Complaint, Cantu asserted that in Louisiana the Louisiana Workforce Commission ("LWC") operates as the SLA, though it now disputes this.[1]

Mr. Eugene Breaud was the blind vendor licensed to provide food services at Fort Polk from 2001 until his death in 2011. During that time, Breaud partnered with Cantu in fulfilling that contract.[2] Immediately following Breaud's death, the plaintiff continued providing food services at Fort Polk in the absence of a blind vendor on an interim basis until Mr. Miles Kimball was temporarily awarded the position.[3]

When the plaintiff's contract was near expiration, the LWC announced that it would be accepting applications from licensed blind vendors for a permanent position; the announcement further stated that LWC would assist the blind vendor in finding and selecting a "teaming partner."[4] The licensed blind vendor and the selected teaming partner were then to collaborate in presenting a proposal to the federal government for a new contract for the provision of food services at Fort Polk.[5]

LWC then selected the defendant, Frazier, as the new licensed blind vendor.[6] Frazier informed the plaintiff that he was now the licensed blind vendor for Fort Polk, and the plaintiff alleges that Frazier "agreed that [the plaintiff] would be the teaming partner" for Fort Polk.[7] Frazier notified the plaintiff several weeks later that he, Frazier, had been notified by the LWC

---

[1] *See* Am. Compl. (Rec. Doc. 18) ¶ 16 (*citing* LA. REV. STAT. ANN. §§ 23:1, 23:3022, 36:301, 36:309).
[2] *See id.* ¶¶ 19-20.
[3] *Id.* ¶ 20.
[4] *Id.* ¶ 23. According to the plaintiff's Amended Complaint, blind vendors fulfilling contracts under the Act often work with so-called "teaming partners"—food service consulting companies which assist the blind vendor in the food service operation. *Id.* ¶¶ 17-18.
[5] *Id.*
[6] *Id.* ¶ 24.
[7] *Id.* ¶ 25; *see also* Email from Melvin Lee Frazier to Robert Welch, Chief of Staff for Cantu Services, Inc., Sept. 15, 2011 (Rec. Doc. 18-4), at 2.

that a meeting would be held to determine which of the potential teaming partners would ultimately be awarded the teaming partner position.[8]

Both the plaintiff and Blackstone Consulting, Inc. ("Blackstone"), gave presentations to Frazier and the LWC in early October, 2011.[9] Shortly thereafter, the plaintiff was notified by Renee Ellender Roberie, Chief Financial Officer for the LWC, that the LWC did not "acknowledge or approve of" the email that Frazier had sent to the plaintiff. She further stated that Frazier "did not have the authority" to select the plaintiff as the teaming partner because, as was apparently stated in the initial vacancy announcement, the LWC "must approve all teaming partner agreements."[10]

Frazier and the LWC ultimately did not select the plaintiff as Frazier's teaming partner for the new Fort Polk contract.[11] The plaintiff alleges that the LWC and Frazier's denial of the plaintiff's services was "arbitrary and capricious and was not based on [the plaintiff's] past performance," qualifications, or "any other legitimate or rational basis."[12] In late October, 2011, Frazier and Blackstone, through the LWC, put forth a bid for the new long-term food service contract at Fort Polk.[13] The federal government thereafter awarded them the contract.[14]

Furthermore, the plaintiff also complains that it had been advised that it would be entering into a "bridge contract" between the expiration of the contract extension that was in place at the time of the filing of this suit, on June 30, 2012, and the commencement of the new long term Fort Polk contract.[15] However, on May 3, 2012, Kevin Monk, Executive Director of

---

[8] Am. Compl. (Rec. Doc. 18) ¶ 26.
[9] *Id.* ¶¶ 27-31.
[10] Letter from Renee Ellender Roberie to Ricardo Cantu, Oct. 21, 2011 (Rec. Doc. 18-10).
[11] Am. Compl. (Rec. Doc. 18) ¶35.
[12] *Id.*
[13] *Id.* ¶ 39.
[14] *Id.* ¶ 40.
[15] *Id.* ¶ 41.

3

Blind Services for the LWC, wrote an email to the plaintiff in which he indicated that the plaintiff's services would not be employed at Fort Polk during the "bridge contract" period.[16]

Cantu filed suit against Frazier on May 18, 2012, for breach of contract.[17] Frazier filed a motion for summary judgment on June 24, 2014.[18] The court denied Frazier's motion on March 11, 2015.[19] Cantu filed the present motion on October 27, 2015.[20]

## LAW & ANALYSIS

### I. Summary Judgment

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the

---

[16] Email from Kevin Monk to Mr. Cantu and Robert Welch, May 3, 2012 (Rec. Doc. 18-13), at 2.
[17] Compl. (Rec. Doc. 1) ¶¶ 62-64. Several other claims were filed against the LWC and various state officials as well, but those parties have all been terminated. *See* Mem. Ruling (Rec. Doc. 191); *see also* Stipulation of Dismissal (Rec. Doc. 129).
[18] Mot. for Summ. J. (Rec. Doc. 144).
[19] Mem. Ruling (Rec. Doc. 189).
[20] Mot. for Summ. J. (Rec. Doc. 195).

4

court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075.

## II. Breach of Contract

Cantu argues that it is entitled to summary judgment because (1) Frazier entered into a contract with Cantu, and (2) the contract was not subject to a suspensive condition. The issues are nearly identical to those addressed by the court in its memorandum ruling regarding Frazier's motion for summary judgment.[21]

### A. Existence of a Contract

The parties dispute whether there was a valid offer and acceptance sufficient to form a contract in this case. Frazier asserts that the parties had "contemplated that any teaming partner contract would be detailed and in writing."[22] Cantu contends that it had a valid verbal agreement with Frazier.

A party claiming the existence of a contract has the burden of proving that the contract was perfected. *Enter. Prop. Grocery, Inc. v. Selma, Inc.*, 38,747 (La. App. 2 Cir. 9/22/04); 882 So.2d 652, 665 (citing *Pennington Constr., Inc. v. R A Eagle Corp.*, 94-0575 (La. App. 1 Cir. 3/3/95); 652 So.2d 637). A contract is an agreement by two or more parties whereby obligations

---

[21] *See* Mem. Ruling (Rec. Doc. 189).
[22] Mem. in Opp'n to Mot. for Summ. J. (Rec. Doc. 198), at 7.

5

are created, modified, or extinguished. LA. CIV. CODE art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. LA. CIV. CODE art. 1927.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. *Id.* When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. LA. CIV. CODE art. 1947.

In its previous ruling on a motion for summary judgment by Frazier, the court found that there was a genuine dispute as to a material fact over whether an agreement between Frazier and Cantu existed that obligated Frazier to select Cantu as his partner. Cantu is correct in asserting that where parties file cross-motions for summary judgment on the same claims, the court must consider each party's motion separately and on its own merits. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998). However, it is also true that both motions must be denied if the court finds there is a genuine dispute as to a material fact. *Id.* In its previous ruling, the court was free to find the existence of a contract if the evidence supported such a finding,[23] but instead found that there was a genuine dispute as to a material fact as to whether Frazier and Cantu entered into a contract. In the instant motion, Cantu has failed to introduce any new evidence or arguments that had not already been presented to the court when it adjudicated Frazier's motion. Moreover, the present motion requires the court to interpret the evidence in the light most favorable to Frazier. In essence, Cantu is asking the court to reconsider its previous finding based on identical evidence even though now the evidence is to

---

[23] Although Frazier's motion for summary judgment argued there was no contract, the court could have rendered summary judgment in favor of Cantu and found there was a contract even if Cantu had not yet filed a formal cross-motion for summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998).

6

be interpreted in favor of Frazier. The court refuses to do so and finds that there is a genuine dispute as to a material fact over whether an agreement between Frazier and Cantu existed that obligated Frazier to select Cantu as his partner.

### B. Whether the Contract Was Subject to a Suspensive Condition

A conditional obligation is one dependent on an uncertain event. LA. CIV. CODE art. 1767. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. *Id.* Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties. LA. CIV. CODE art. 1768. A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment. LA. CIV. CODE art. 1772.

Once again, in the instant motion Cantu merely repackages arguments already examined by the court when it addressed Frazier's motion for summary judgment. The court finds that there is a question of fact as to whether Frazier's selection of Cantu was subject to a fulfilled suspensive condition.

Lake Charles, Louisiana, this 21 day of _____, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

7