RECEIVED
IN LAKE CHARLES, LA.

AUG 3 1 2016

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CANTU SERVICES, INC., | * | CIVIL ACTION NO. 2:12-CV-1292 |
| Plaintiff | * | |
| V. | * | JUDGE MINALDI |
| MELVIN LEE FRAZIER, | * | |
| Defendant | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion for Attorney Fees (Rec. Doc. 248) filed by Kevin Monk, Renee Ellender Roberie, Mark S. Martin, Janell Bosarge, and Curt Eysink (collectively "State Officials"), an Opposition (Rec. Doc. 258) filed by Cantu Services, Inc. ("Cantu"), Replies (Rec. Docs. 265 & 268) filed by State Officials, a Motion for Review of Clerk's Taxation of Costs in Favor of State Officials (Rec. Docs. 271 & 272) filed by Cantu, a Motion for Review of Clerk's Taxation of Costs in Favor of Defendant Frazier (Rec. Docs. 273 & 274) filed by Cantu, and an Opposition (Rec. Doc. 276) filed by State Officials. For the following reasons, State Officials' Motion for Attorney Fees (Rec. Doc. 248) is **GRANTED IN PART** and **DENIED IN PART**, Cantu's Motion for Review of Clerk's Taxation of Costs in Favor of State Officials (Rec. Docs. 271 & 272) is **DENIED AS MOOT**, and Cantu's Motion for Review of Clerk's Taxation of Costs in Favor of Defendant Frazier (Rec. Docs. 273 & 274) is **DENIED AS MOOT**.

The initial complaint arose out of an unsuccessful public bid by Cantu Services, Inc., to be the teaming partner of Melvin Lee Frazier, a blind vendor, at Fort Polk.[1] The Randolph-Sheppard Act, 20 U.S.C. § 107-107(e) ("the Act"), mandates a priority to blind persons receiving

---

[1] Compl. (Rec. Doc. 1). A more comprehensive assessment of the facts and procedural history can be found in our previous Memorandum Ruling dismissing the claims against the State Officials. Mem. Ruling for Summ. J. (Rec. Doc. 191)

1

vending contracts on federal property.[2] The Act allows the State to develop the means of obtaining a contract and selecting a blind person to operate the contract through a State Licensing Agency (SLA).

On October 3, 2011, Frazier notified Cantu of a formal bidding proposal implemented by the Louisiana Workforce Commission (LWC), which was acting as the SLA, between Cantu and a competitor, Blackstone Consulting, Inc.[3] After presentations and several communications with all participating bidders, LWC and Frazier ultimately selected Blackstone as the teaming partner.[4] As a result of this decision, Cantu filed suit on May 18, 2012, against LWC employees in their personal and official capacities under 42 U.S.C. § 1983.[5] On July 13, 2012, the State Officials filed a Motion to Dismiss all claims asserted against them.[6] The State Officials argued that they were entitled to sovereign immunity for all claims against them in their official capacities and that they were entitled to qualified immunity for all claims against them in their personal capacities.[7] The court denied the State Officials' motion finding that the *Ex parte Young* exception to sovereign immunity applied.[8] The Fifth Circuit Court of Appeals reversed and dismissed the claims asserted against the State Officials in their official capacities.[9]

On June 1, 2014, the court ruled that the State Officials had qualified immunity regarding the claims asserted against them in their personal capacities.[10] Cantu filed a Motion to Reconsider, in which Cantu changed its position on whether LWC was the proper SLA, and the court ordered the State Officials to file a Memorandum in Support of Summary Judgment on the

---

[2] *Id.* at 3.
[3] Compl. (Rec. Doc. 1), at 5-6.
[4] *Id.* at 6.
[5] *Id.*
[6] Mot. to Dismiss (Rec. Doc. 33).
[7] Mot. for Attorney's Fees (Rec. Doc. 248), at 1.
[8] Hearing Tr. (Rec. Doc. 88), at 11-12. This court did not rule on the motion to the claims against them in their personal capacities. *See* Mem. Ruling (Rec. Doc. 77).
[9] J. on Mot. to Dismiss (Rec. Doc. 116).
[10] Mem. Ruling (Rec. Doc. 142).

applicability of qualified immunity.[11] On April 10, 2015, the court dismissed all the remaining claims asserted against the State Officials.[12] On February 25, 2016, the State Officials entered this Motion for Attorney's Fees.[13]

## LAW & ANALYSIS

Rule 54 of the Federal Rules of Civil Procedure allows attorney's fees to be granted to the prevailing party or on the basis of a substantive law granting such fees to a party within fourteen days of a final appealable judgment. FED. R. CIV. P. 54. "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Attorney's fees may be awarded against a prevailing defendant if the plaintiff's claim "was frivolous, unreasonable, or groundless, or [if] the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422; *see also Com. v. Flaherty*, 40 F.3d 57, 60-61 (3d Cir. 1994). Frivolity is measured by assessing whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful. *Id.* at 609; *see also Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981); *see also Plemer v. Parsons-Gilbane*, 713 F.2d 1127 (5th Cir. 1983). The factors important to frivolity determinations are (1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial. *United States v. State of Miss.*, 921 F.2d 604, 609 (5th Cir. 1991); *see also Myers v. City of Wes Monroe*, 211 F.3d 289, 292 (5th Cir. 2000). Because the court has discretion to award fees and costs under § 1988, these factors are merely

---

[11] Mot. to Reconsider (Rec. Doc. 147); Mem. Order (rec. Doc. 169).
[12] Mem. Ruling for Summ. J. (Rec. Doc. 191); J. Grant. Summ. J. (Rec. Doc. 192).
[13] Mot. for Attorney's Fees (Rec. Doc. 248).

3

illustrative and are neither exclusive nor controlling. *Hawkins v. Coleman*, No. 6:10-cv-0152, 2011 WL 3100562, at *1 (W.D. La. July 25, 2011).

Once a court has determined that a movant is entitled to attorney's fees, then it must determine the amount of fees appropriate to award by determining the lodestar fee and then adjusting the fee. "To calculate attorneys' fees, a court must first 'calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Green v. Administrators of the Tulane Education Fund*, 284 F.3d 642, 661 (5th Cir. 2002). The court then determines whether the lodestar amount needs to be adjusted upward or downward based on twelve factors (the "*Johnson* factors"): "1) the time and labor required to litigate the matter; 2) the novelty and complicatedness of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case imposed time constraints; 8) the amount involved and results obtained; 9) the experience, reputation, and ability of the attorney; 10) whether the case was 'undesirable'; 11) the type of attorney-client relationship and whether the relationship was long-standing; and 12) awards made in similar cases." *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). The court need not reconsider any of the twelve factors that are subsumed in the lodestar. *See id.*

In a Memorandum Ruling, the court found that qualified immunity applied.[14] The court granted Cantu's Motion to Reconsider and vacated that Memorandum Ruling only because it improperly converted the Rule 12 motion to a Rule 56 motion without providing proper notice to Cantu. Nonetheless, Cantu should have known at this point that its claims against State Officials were frivolous. In an attempt to overcome the qualified immunity defense, Cantu argued that

---

[14] Mot. to Dismiss (Rec. Doc. 142).

4

LWC was not the SLA and thus the State Officials actions were *ultra vires*.[15] However, in Cantu's original and amended complaints, it specified that LWC was the SLA under the Rehabilitation Act and the Randolph-Sheppard Act.[16] This change in position of the status of LWC is a reflection of the frivolity of the remaining claims against the State Officials at that point in the litigation. The court ultimately granted the State Officials' motion to dismiss.[17] Accordingly, all attorney's fees that the State Officials incurred after the Motion to Reconsider was granted are awarded to them.

Furthermore, all attorney's fees incurred for the Motion to Dismiss defendant Joseph Burton are also awarded to the State Officials. The motion was filed because Burton was never a served party in the suit.[18] Cantu initially opposed the Motion to Dismiss, but then voluntarily dismissed Burton.[19] Thus, the State Officials are entitled to attorney's fees for their efforts regarding Joseph Burton.

In calculating how much to award to the State Officials, the court must first determine a lodestar hourly rate. *See Green v. Administrators of the Tulane Education Fund,* 284 F.3d 642, 661 (5th Cir.2002). After determining the hourly rate, it must adjust the lodestar fee according to the *Johnson* factors. *Id.* The State Officials charged an hourly rate of $130.[20] This court finds that the rate that the State Officials charge is comparable to the community, and that it does not need to be adjusted according to the *Johnson* factors. Having assessed the hourly rate, the next step is to multiply it by the number of hours expended. As stated above, the court will only grant attorney's fees for the work incurred due to the frivolous claims brought forth by Cantu. In this

---

[15] Mem. Ruling Grant. Summ. J. (Rec. Doc. 191), at 6.
[16] *Id.* at 8; Compl. (Rec. Doc. 1), at ¶ 12 and Am. Verified Compl. (Rec. Doc. 18) at ¶ 16. The court later found that as a matter of law LWC serves as the SLA. Order on Mot. in Lim. (Rec. Doc. 226), at 5.
[17] J. (Rec. Doc. 192).
[18] Mot. for Attorney's Fees (Rec. Doc. 248), at 9.
[19] *Id.*
[20] Ex. A (Rec. Doc. 248), at 1.

case, the counsel for the State Officials spent 32.4 hours on the Motion to Reconsider, totaling $4,212.00 in fees. On the Memorandum in Support of Summary Judgment, it worked 150.8 hours, incurring a total of $19,604.00. Counsel for the State Officials spent 32.6 hours on the Motion to Strike Cantu's Opposition to State Officials' Memorandum in Support of Summary Judgment, totaling $4,238.00 in fees. For the Motion to Dismiss Joseph Burton, the attorneys for the State Officials spent 22.9 hours preparing it. The total fees for that motion are $2,977.00. Therefore,

**IT IS ORDERED** that attorney's fees be awarded to State Officials in the sum totaling **$31,031.00**.

**IT IS FURTHER ORDERED** that Cantu's Motion for Review of Clerk's Taxation of Costs in Favor of State Officials (Rec. Docs. 271 & 272) is **DENIED AS MOOT**

**IT IS FURTHER ORDERED** that Cantu's Motion for Review of Clerk's Taxation of Costs in Favor of Defendant Frazier (Rec. Docs. 273 & 274) is **DENIED AS MOOT**

Lake Charles, Louisiana, this 29 day of August, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE